UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAIME MARROQUIN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-06-1453 |
| | § | |
| CITY OF PASADENA, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

This Title VII hostile work environment and retaliation case is before the court on defendant City of Pasadena's motion for summary judgment.[1] (Dkt.18). The summary judgment record discloses the presence of genuine issues of material facts which require denial of the motion.[2]

**1.    Factual Background**

The following facts are either undisputed or viewed in the light most favorable to the non-movant, as Rule 56 requires. Marroquin has been employed by the City of Pasadena

---

[1]  The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment.

[2]  Each party has objected to summary judgment affidavits submitted by the other party. *See* Dkt. 19, at 25-26; Dkt. 22. These objections, mostly on grounds of hearsay, relevance, and speculation, are overruled. Contrary to defendant's claim, plaintiff's affidavit on the whole conforms with his deposition testimony. Those parts of the deposition ostensibly at odds with his affidavit are also at odds with plaintiff's other deposition testimony. The affidavit does not generate new fact issues beyond those already present in the deposition. "To the extent they exist, any discrepancies in those averments present credibility issues properly put to the trier-of-fact." *Dibidale of Louisiana, Inc. v. American Bank & Trust Co.,* 916 F.2d 300, 307 (5th Cir. 1990).

since 1989. In 1996, he was promoted from laborer in the maintenance department to become the City's sole welder. In 2003, David Weinel became Marroquin's supervisor in the maintenance department.

Marroquin alleges that Weinel harassed him due to his national origin by a combination of physical and verbal abuse. In particular, he testified that Weinel on 20 to 25 occasions approached Marroquin at work and grabbed or hit him in the crotch, while making comments like "I'm going to get you, you fucking Mexican," or "What? That didn't hurt you, you fucking Mexican?," or "That did not hurt, you dumb fucking wetback."[3] Marroquin witnessed one incident of Weinel crotch-grabbing directed at a non-Hispanic employee, but testified that Weinel "was doing it mostly to me."[4] In addition, Weinel frequently referred to Marroquin as "perro," the Spanish word for dog, which Marroquin regarded as a derogatory ethnic slur. Weinel continued to refer to Marroquin in this manner over Marroquin's objections.[5] The summary judgment record also contains evidence that other employees heard Weinel refer to Mexicans using derogatory terms such as "spic" and "wetback."[6]

---

[3]   Plaintiff deposition 132-33; Plaintiff exhibit 1, ¶ 12.

[4]   P. Dep. 40.

[5]   *Id.* at 20.

[6]   Defendant exhibit E.

Marroquin first complained about Weinel's conduct to Larry Gregory, Weinel's direct supervisor, in January 2005. Marroquin alleges that Gregory told him a human resources employee, Noreen Wasserman, would conduct an investigation, but there is no evidence she did so. Several weeks passed with no apparent action on his complaint, so Marroquin next went to see Gregory's superior, Bruce McCoy, director of maintenance. McCoy took no action. According to Marroquin, Gregory became angry that Marroquin went over his head to McCoy, and on January 31, 2005 Gregory told Marroquin that the matter had been turned over to the City's human resources department. There is no evidence that human resources conducted an investigation at that time.

On April 4, 2005, Marroquin went to see Rick Nelson, director of human resources for the City. Marroquin requested Nelson transfer him to the City's wrecker department so he could drive wreckers. Nelson informed Marroquin that there were no open positions in the City's wrecker department.[7] Marroquin contends that he asked for another meeting, but Nelson said "he [Nelson] had heard all he needed to hear."[8]

Dissatisfied with the City's lack of response, Marroquin filed a charge of national origin discrimination with the EEOC on April 25, 2005. After receiving notice of the charge, Nelson undertook a somewhat leisurely investigation, culminating seven months later in the

---

[7] Nelson later learned that Marroquin had pled guilty and was on probation for deadly conduct with a motor vehicle, and thus not eligible to drive wreckers. Marroquin concedes that he does not have a proper license to be a driver. Plaintiff's response, at 10.

[8] P. Ex. 1, ¶ 23.

taking of sworn statements from twelve maintenance department employees.[9]  Although some of these employees confirmed Weinel's name-calling and physical attacks, the City concluded that there had been no national origin discrimination.  Nevertheless, Weinel was given some unspecified discipline for what was described as "inappropriate behavior."

Sometime after filing his EEOC complaint, Marroquin requested another transfer, this time to the tire shop.  Again, Marroquin was told there was no opening.  Instead, Marroquin was transferred to the City wastewater department.  Marroquin alleges that he was told that if he did not accept the transfer he would be fired.[10]  The City claims they offered to transfer him back to the maintenance department if he were willing to work under Weinel.[11]

Upon transfer to the waste water department, Marroquin was assigned to a sewer rehabilitation crew.  Marroquin's salary, benefits, and work hours were unchanged by the transfer, but he asserts that it is hard, stressful, degrading work.  Marroquin asserts that he has suffered a loss of prestige and reputation by his transfer from a position as a skilled welder to a position "shoveling shit in sewers."[12]

Marroquin timely filed this lawsuit on April 27, 2006 after requesting and receiving a right to sue letter from the EEOC.

---

[9]   These statements, dated November 15, 2005, are in the record as defendant's exhibit E.

[10]   P. Dep. 15.

[11]   D. Ex. B, ¶ 27.

[12]   P. Ex. 1, ¶ 30.

**2.    Analysis**

The standard for granting summary judgment in employment discrimination cases is by now too familiar to warrant extended recitation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000), succinctly summarizes the appropriate inquiry:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

The court must draw all reasonable inferences in favor of the non-movant, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51. Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id.* at 148.

**A.    Hostile Work Environment**

Marroquin's hostile work environment claim is premised on the conduct of his direct supervisor David Weinel. To establish a claim of supervisor harassment under Title VII,[13] a plaintiff must show: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon national origin; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment

---

[13] Hostile workplace claims based on national origin harassment are analyzed under the same framework as sexual harassment claims. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002).

and create an abusive working environment.[14] *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Title VII is violated when "the workplace is so permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether harassment is sufficiently severe or pervasive to state a claim is judged by both an objective and a subjective standard. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (plaintiff's subjective perception must be objectively reasonable). In other words, the harassment must be such that a reasonable person would find it hostile or abusive, and the victim must in fact have found it so. *Harris*, 510 U.S. at 21-22. In making this determination, the court considers factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 23; *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000).

Marroquin has successfully raised a fact issue on each of the four required elements of this claim. His national origin is Hispanic, a protected group under Title VII, and he has testified to unwelcome harassment in the form of physical and verbal abuse. Despite some

---

[14] Where the harassment is perpetrated by a co-worker, the plaintiff must also show a fifth element: that his employer knew or should have known of the harassment and failed to take prompt remedial action. *Harvill*, 433 F.3d at 434.

equivocal deposition testimony regarding Weinel's motivation for crotch-grabbing,[15] his corroborated propensity for ethnic slurs (including at least one instance of crotch- grabbing accompanied by such a slur) is sufficient to warrant an inference that the abuse directed towards Marroquin was based on his national origin. Finally, as to the "severe or pervasive" element, there is enough summary judgment evidence to raise a fact issue on each of the *Harris* factors listed above: the physical abuse was frequent (20-25 occasions); severe, as the genital-grabbing was both painful and intrusive; physically threatening and humiliating, as opposed to mere verbal abuse; and unreasonably interfering with his job performance, having been assaulted on at least one occasion while welding with his hood on.[16]

The City further argues that summary judgment is appropriate based on the so-called *Ellerth/Faragher* affirmative defense. This defense is available to an employer when the alleged harassment was committed by a supervisor with immediate or successively higher authority over the plaintiff but did not result in a "tangible employment action" against the employee. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of*

---

[15] At one point on cross examination Marroquin (over objection) concedes that the "inappropriate touching Weinel was doing *appears* to be unrelated to the national origin or race of the person he's touching." P. Dep. 42 (emphasis supplied). At other points, when asked to explain the connection between his national origin and Weinel's crotch grabbing, Marroquin replied, "That he was doing it mostly to me" rather than other non-Hispanic employees. *Id.* at 40; see also *id.* at 132 ("Most of the time it was just me, picking on me."). Although there is some tension in this testimony, it is not irreconcilable. While a jury might well conclude that the former testimony undercuts the latter, on summary judgment the court is bound to draw all reasonable inferences in favor of the non-movant.

[16] P. Dep. 131.

*Boca Raton*, 524 U.S. 775, 807 (1998). The affirmative defense has two elements: (a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior based on national origin, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.*

Marroquin preliminarily objects to the City asserting the *Ellerth/Faragher* defense on the grounds that the City did not plead this affirmative defense in its answer. While it is true that the City did not plead this defense by name, the court declines to find a waiver of the defense under these circumstances. Marroquin does not need additional discovery to respond to this affirmative defense, nor has he been prejudiced by the defendant's raising the defense in a motion for summary judgment filed well before trial. *See Lucas v. United States,* 807 F.2d 414, 418 (5th Cir. 1986). Because the City has raised the defense at a "pragmatically sufficient time," its failure to comply with the affirmative defense pleading requirement of Rule 8(c) will not be deemed a waiver. *See Allied Chemical Corp. v. Mackay,* 695 F.2d 854, 855-56 (5th Cir. 1983).

Even so, the City falls far short of establishing either prong of the *Ellerth/Faragher* defense as a matter of law. The City's investigation proceeded at a snail's pace; eleven months elapsed between Marroquin's initial complaint in January and the employees' sworn statements taken in November. This hardly constitutes prompt corrective action. Nor is there any basis to find that Marroquin unreasonably failed to take advantage of the corrective

opportunities afforded to him by the City. He promptly complained about the abusive treatment, and finding no relief, pursued his complaint up the organizational chain with persistence. His requests for specific transfers having been denied, he accepted the only form of "relief" offered by the City— a transfer to a job in the waste water department, far "more arduous and dirtier" than his previous job. *See Burlington N. & S. F.R. Co. v. White,* 126 S.Ct. 2405, 2408 (2006). Given these facts, the City's *Ellerth/Faragher* defense must fail.[17]

## B. Retaliation

Marroquin alleges that he was reassigned to a demeaning position on a sewer rehabilitation crew in retaliation for his complaints of national origin discrimination by Weinel. Marroquin admits he requested a transfer, but alleges that he wanted a transfer to the tire shop, which operates the City's wreckers, not the wastewater department. He testifies that he was given the choice of accepting the transfer or being fired.

In order to establish a claim of retaliation, a plaintiff must show (1) activity protected by Title VII; (2) materially adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Pierce v. Texas Dep't of Criminal Justice,* 37 F.3d 1146, 1151 (5th Cir. 1994). A materially adverse action for purposes of retaliation need not be limited to "actions that affect employment or alter the conditions of the workplace," as is required for proof of a discrimination claim under Title VII's substantive provisions. *Burlington Northern & Santa Fe Rwy Co. v. White*, 126 S. Ct. 2405, 2414 (2006). An action

---

[17] This ruling is for summary judgment purposes only, and without prejudice to the City's right to pursue this affirmative defense at trial based on the complete trial record.

is materially adverse for purposes of Title VII's retaliation provision if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 (internal citation omitted).  Whether or not an action will meet this standard will often depend on the particular circumstances. *Id*.  Moreover, as the Fifth Circuit has recently reaffirmed, the causal connection required in retaliation cases is causation-in-fact or "but for" causation.  *Strong v. University Health Care System, L.L.C.,* 482 F.3d 802, 806 (5th Cir. 2007) (applying "but for" standard rather than *prima facie* "causal link" standard in affirming summary judgment against Title VII retaliation plaintiff); *Jack v. Texaco Research Center,* 743 F.2d 1129, 1131 (5th Cir. 1984) ("Whether or not there were other reasons for the employer's action, the employee will prevail only by proving that "but for" the protected activity she would not have been subjected to the action of which she claims").

Marroquin unquestionably engaged in protected activity when he complained about discrimination internally and later filed his EEOC charge.  Reassignment from a skilled welder position to a sewer rehabilitation crew could reasonably be regarded as a materially adverse change in employment after *Burlington*, where the Court held that a reassignment from forklift duty to the dirtier and more arduous tasks of track laborer met that test. 126 S.Ct. at 2408.  The only evidence Marroquin has presented on this issue consists of his own testimony that the sewer job is "stressful, hard work" and "a degrading job,"[18] but that evidence is neither contested by the defendant nor inherently implausible. Marroquin at the

---

[18]     P. Ex.1, ¶¶ 29-30.

very least has raised a fact issue whether the prospect of sewer work might dissuade a reasonable employee from filing a discrimination charge.

As for causal connection, the evidence is far from overwhelming, but ample enough to create a jury issue. Marroquin's transfer to the wastewater department apparently occurred within two months of his EEOC charge, which is sufficiently close in time to be suspicious. *See Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 44 (5th Cir. 1992) (time lapse is "one of the elements in the entire calculation"). Temporal proximity alone is insufficient, of course. *Strong v. University Health Care System, L.L.C.,* 482 F.3d at 808. Other evidence suggesting retaliatory motive is the hostile reaction of Marroquin's supervisors to his discrimination complaint. Marroquin testified without contradiction that both his immediate supervisor (Weinel) and his second line supervisor (Larry Gregory) were upset about his complaints.[19] While there is no evidence that Weinel played any role in the transfer,[20] maintenance supervisor Gregory was in fact consulted about Marroquin's transfer to wastewater.[21] This evidence permits an inference that the transfer decision was infected by a supervisor with a retaliatory motive.

---

[19] P. Dep. 125; P.Ex. 1, Aff. ¶ 20.

[20] D. Ex. C, ¶¶ 11-12. Marroquin argues that Weinel retaliated against him in other ways, such as by increased physical and verbal abuse, as well as by singling him out for constant monitoring on the job. In fact, as regards Weinel, it is not exactly clear where plaintiff's national origin discrimination claim ends and his retaliation claim begins. Because the only act of retaliation referred to in plaintiff's complaint is "reassigning him to a demeaning position" (¶ 10), that action will be construed as the limit of plaintiff's retaliation claim for purposes of this motion only, without prejudice to future rulings at trial.

[21] D. Ex. B, ¶ 25.

The City's principal argument against causation is that Marroquin's own request for a transfer forecloses any retaliation claim. It is not disputed that Marroquin wanted to get away from Weinel's abuse, and that he requested transfers on two specific occasions, first to the wrecker department and then to the tire shop. Both requests were turned down for lack of an opening. Marroquin was then presented with a transfer to the sewer job, which he had not requested, and told that his only option was accept or be fired.[22] In such circumstances, the City's argument that the causal chain is necessarily broken by Marroquin's previous transfer requests is not tenable.

A recent Fifth Circuit retaliation decision is instructive here. In *McCoy v. City of Shreveport,* ___ F.3d ___, 2007 U.S.App. LEXIS 16582 (5th Cir., July 11, 2007), the plaintiff was a police officer who alleged retaliation when the city placed her on administrative leave and made her surrender her gun and badge, which she argued was the functional equivalent of a discharge. The city argued, like the City here, that plaintiff's retaliation claim was foreclosed because she had voluntarily requested leave. The Fifth Circuit rejected that argument, because the action taken was much more than she had asked for:

> The record also makes clear, however, that McCoy did not volunteer to surrender her gun and badge and did not designate her own leave as

---

[22] P. Ex. 1, ¶ 27. The City disputes plaintiff's testimony here, saying that Marroquin also had the option of returning to work under the supervision of Weinel, the source of his abuse. Even if the court were free to discredit plaintiff's testimony on the point, which it is not, the City's version does no more than present Marroquin with a Hobson's choice, i.e. an apparently free choice which is really no choice at all.

>administrative: SPD made those decisions and took those actions on its own. As McCoy contends that those actions (and not her leave generally) constitute an adverse employment action in this case, we do not regard her initial voluntary request for leave as foreclosing her retaliation claim.

2007 U.S.App. LEXIS 16582, slip op. at 14-15.  Similarly, Marroquin's retaliation claim is not simply that he was transferred, but that he was transferred to a demeaning job working in sewers, which he did not ask for.  Viewed in context, as *McCoy* instructs, Marroquin's transfer requests do not foreclose his retaliation claim.

Finally, on the question of pretext, the City has offered no legitimate, non-discriminatory reason for Marroquin's transfer to the sewer crew, apart from his previous transfer requests for (unavailable) positions away from Weinel.  Although the City's assertion of no openings in either the tire shop or the wrecker department at the time of Marroquin's requests is not seriously disputed, the summary judgment record is not well developed concerning the availability of other open positions for which Marroquin may have been qualified.  The affidavit from the City's human resources director explained that he "compared [Marroquin's] skills to an *unposted vacancy,* and determined that he was qualified for an open position in the City Wastewater Department."[23]  Significantly, the affidavit makes no claim that the sewer crew job is the only vacancy, posted or unposted, for which Marroquin may have been qualified.  If that had been the case, then no sinister motive behind the transfer could be inferred.  Absent such proof, a reasonable jury might well

---

[23]     D. Ex. B, ¶ 24 (emphasis supplied).

conclude on this record that the City merely took advantage of Marroquin's previous transfer requests to disguise its retaliatory motive.[24]

**3.    Conclusion and Order**

Marroquin has presented sufficient evidence to meet his burden to avoid summary judgment on both his hostile work environment and retaliation claims. It is therefore

ORDERED that the City of Pasadena's motion for summary judgment (Dkt. 12) is denied.

Signed at Houston, Texas on August 2, 2007.

Stephen Wm Smith
United States Magistrate Judge

---

[24]    The City also points to Marroquin's answer to a deposition question concerning the persons he was complaining about, in which he agreed that Weinel was "the only person who treated me like that." P. Dep. 80. Weinel was apparently not involved in the transfer decision. This testimony may well have impeachment value at trial, but the court cannot agree with the City that by this single answer Marroquin has abandoned the retaliatory transfer claim pleaded in his complaint.